MILLER, Judge.
Plaintiff, Melvin Jagneaux, filed this workmen’s compensation suit against American Universal Insurance Company, the insurer of his former employer, Standard Fittings Corporation. After a hearing on the merits the trial court found plaintiff *602 failed to prove a compensable accident and dismissed the suit. .Plaintiff has appealed.
Plaintiff claims he had an .accident on September 25, 1967 in St. Landry Parish while in the scope of employment with Standard Fittings Corporation. He testified he slipped and fell while carrying a piece of steel. A fellow employee, John L. Thibodeaux, took plaintiff to the office of Dr. Sidney J. Rozas, the company physician. Plaintiff states he told Dr. Rozas of pain in his back, lower abdomen, and a cut on his right hand. Dr. Rozas examined him, found muscle spasm in the lower lumbar region, treated his hand and permitted plaintiff to return home. Several days later the hand became infected and plaintiff was hospitalized. He remained under the care of Dr. Rozas until early in November of 1967 when he complained that Dr. Rozas had neglected his abdomen pains and he wanted to see another doctor. He was sent by defendant to see Dr. James McCarthy, a general practitioner of Opelousas who examined him on November 7th and again on November 16th, 1967, at which time he discharged him to return to work. Dr. McCarthy stated plaintiff complained of pin in the lower abdomen and upon examination for a hernia he discovered the right external ring dilated but no hernia present.
On November 10, 1967, Dr. Rozas released plaintiff to return to work. Plaintiff went to see Dr. W. J. Briley on January 29, 1968, complaining of pain in the abdomen. He worked from November 29, 1967 until January 31, 1968 when he was taken from work to the hospital on an emergency call and placed under the care of Dr. Briley, who subsequently diagnosed a right inguinal hernia, among other things. He referred plaintiff to Dr. Daniel H. Buller, a general surgeon of Opelou-sas, who diagnosed a right inguinal hernia on his second examination. Dr. Buller twice scheduled plaintiff for an operation of the hernia and each time Dr. Buller called it off, because of other medical complications. After scheduling a hernia operation for the third time, plaintiff refused to go through with it.
Defendant paid compensation from September 26, 1967 through November 20, 1967 and from January 31, 1968 through April 23, 1968. No compensation has been paid since the latter date.
The sole issue is whether plaintiff sustained a hernia as a result of his accident on September 25, 1967.
Plaintiff testified he had., abdominal pains immediately after the accident. His wife testified he complained about pain in his lower abdomen since the date of the accident on September 25, 1967. John L. Thibodeaux, a fellow worker • and witness for the plaintiff, testified he had taken plaintiff to Dr. Rozas’ office on the date of the accident and when plaintiff emerged from the doctor’s office he complained of pain in the lower abdomen and told Thibo-deaux Dr. Rozas had not examined, this area. They discussed the similarity between plaintiff’s symptoms and those of Thibodeaux’s when the latter had sustained a hernia.
While Dr. McCarthy, the second physician to examine plaintiff, did not find a hernia, he did find the right external ring dilated. Of more significance on the question of abdominal complaints and the time of onset is the history taken by Dr. McCarthy on November 7, 1967 where he noted plaintiff “experienced pain in the lower abdomen initially, and it has persisted.” Dr. McCarthy was more impressed with plaintiff’s back complaints, prescribed exercises and after re-examination on November 16, 1967 pronounced plaintiff fit to return to work.
Plaintiff was examined by Dr. Briley on January 29, 1968 and again on January 31, 1968 when he was admitted to the hospital on an emergency basis. On February 12, 1968 Dr. Briley diagnosed chest pain, cause undetermined, epigastric pain, possibly due to an ulcer, suspected diverticulitis and right direct hernia. He referred plaintiff *603 to Dr. Daniel H. Buller, general surgeon of Opelousas, who made his initial examination on February 13, 1968. On this examination Dr. Buller was not certain plaintiff had a hernia but on February 16th when he examined him again, a positive diagnosis of hernia was made. Dr. Frank P. Savoy, Jr., a general surgeon of Mamou, examined plaintiff on July 1, 1968 with a resulting hernia diagnosis.
There is no serious dispute that plaintiff now has a hernia. The clash comes as to the time element.. Plaintiff states the hernia was the result of the September 25, 1967 accident, and the defendant states it had to occur subsequent to this incident. The trial court in dismissing the suit held that no compensable accident was proved. We do not agree.
The evidence shows plaintiff sustained an accidental injury on September 25, 1967. The most damaging evidence against plaintiff is the testimony of Dr. Rozas who testified plaintiff made no complaint of pain in the lower abdomen, although he did acknowledge plaintiff had complained in the hospital of difficulty with his bowels and bladder.
Plaintiff unquestionably made complaints of abdominal pain to all of the other doctors. On the date of the accident he complained to his fellow worker, John Thibo-deaux, that Dr. Rozas had not examined this area in spite of the pain he felt there. Plaintiff’s seeking to have another doctor examine him and Dr. McCarthy’s corroboration of the abdominal complaint on the initial visit lend credence to the fact that plaintiff was suffering pain in this region of his body.
Defendant contends plaintiff developed a hernia subsequent to the September 25, 1967 accident. Moreover, it seeks to saddle plaintiff with the burden of proving the hernia did not occur subsequent to September 25, 1967. Plaintiff has no such burden. In the case of White v. Calcasieu Paper Company, Inc., 96 So.2d 621 (La.App. 1 Cir.1957) the court, in reversing the finding that no compensable accident occurred, stated the rule that where the claimant is unable to work at the time of the trial because of a disability which is medically related to the accident, then in the absence of any evidence as to any other accident the present disability will not be ascribed to some unshown subsequent injury. White emphasized the principle that where a continued disability is established which relates back to the initial accident, the burden is on the employer to prove that some other accident caused the disability and not upon the employee to prove that no other accident occurred. See also Turner v. Southern Industries Company, 88 So.2d 238 (La.App. 1 Cir.1956). In the instant case plaintiff had complaints of pain in the lower abdomen from the time of the accident to the time of the trial and there is no serious dispute that he now has a disabling hernia. Thus the burden is on the employer, and not the plaintiff, to show there was another accident which caused this continued complaint.
Defendant cites the cases of Agee v. Brown Paper Mill Co., Inc., 190 So. 148 (La.App. 2 Cir.1939), Taylor v. Kirby Lumber Co., 182 So. 169 (La.App. 1 Cir.1938), Knox v. Ethyl Corporation, 53 So. 2d 443 (La.App. 1 Cir.1951), and Morgan v. Strachan Shipping Co., 150 So.2d 643 (La.App. 4 Cir.1963), in support of its position that plaintiff failed to prove a causal connection between the accident of September 25, 1967 and his hernia.
In Agee plaintiff failed to establish the occurrence of any accident and his treating physician accounted for the hernia by attributing it to the constant coughing which resulted from claimant’s tubercular condition. In the present case an accident did occur, plaintiff experienced continual lower abdominal pain from that time and there was no evidence of any other accident or incident which could have caused the disabling hernia.
In Taylor, the claimant worked for several days after his alleged injury, sought *604 and found another job where he worked at heavy manual labor. Moreover, the bulk of the medical opinion was that Taylor had no hernia. In our case, plaintiff was taken to the doctor on the same day and the fact that he has a hernia is not seriously contested.
In Knox plaintiff had been in a motorcycle accident and in a fight with his brother between the time of the alleged compensation accident and the discovery of the hernia. The court found no causal connection between the accident, where Knox’s complaint had been of an injured back, and the discovery of a hernia. In the instant case there were no intervening incidents to explain the cause of the hernia.
The Morgan case is admittedly similar to the instant one but there are differences. In Morgan the initial treating physician testified plaintiff made no complaints referable to the lower abdominal area and his testimony detailed plaintiff’s complaints on each of twelve visits. In this case Dr. Rozas, while testifying on the one hand, that plaintiff had no complaints of pain in the lower abdomen, did acknowledge plaintiff complained of bowel and bladder difficulty. Moreover, except for a brief history taken on the initial visit, Dr. Rozas had few, if any, notes regarding claimant’s complaints on fourteen subsequent visits. In his deposition, taken • almost 18 months later, Dr. Rozas, a busy general practitioner, appeared to be relying on sheer memory regarding plaintiff’s complaints.
We find plaintiff sustained a com-pensable accident on September 25, 1967, resulting in a hernia which has disabled him. Accordingly, the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff, Melvin Jag-neaux, and against defendant, American Universal Insurance Company, Inc., for compensation at the rate of $35.00 per week during disability, not to exceed four hundred (400) weeks in all, subject to credit for compensation previously paid, together with medical expenses applicable to this injury and disability up to the statutory limit. All costs are taxed to defendant-appellee.
Reversed and rendered.