335 So.2d 81 (1976)
Annie THOMPSON, Plaintiff-Appellee,
v.
NATCHITOCHES PARISH HOSPITAL SERVICE DISTRICT et al., Defendants-Appellants.
No. 5533.
Court of Appeal of Louisiana, Third Circuit.
July 6, 1976.
Rehearing Denied August 4, 1976.
Writ Refused October 27, 1976.
*82 Bolen, Halcomb, Bolton & Irwin by James A. Bolen, Jr., Alexandria, for defendants-appellants.
Gerard F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before MILLER, DOMENGEAUX and PAVY, JJ.
MILLER, Judge.
Natchitoches Parish Hospital Service District and its insurer, Argonaut Southwest Insurance Company, appealed the judgment awarding plaintiff, Mrs. Annie Thompson, total and permanent workmen's compensation disability benefits, and $3,000 attorney fees. We affirm the compensation award but reverse the award of attorney fees.
Thompson had been employed by the hospital for eight years as a nurse's aide and emergency medical technician. On May 16, 1975, she was assigned to assist the ambulance driver to take a patient to and from a Shreveport hospital. On the way over she was attending the patient and was seated in the rear of the ambulance. A station wagon rear-ended the ambulance while it was stopped for a red light at a Shreveport intersection. They remained at the scene of the accident for ten minutes until the investigating officer told everyone to move on. Since no one complained of injuries at the time and there was little or no damage to the ambulance, no accident report was filed. The journey continued to the Shreveport hospital. Later in the day the patient was returned to Natchitoches in the same ambulance.
Thompson felt no pain until the day after the accident when she became stiff. Two or three days later, she experienced pain in her back and neck, as well as her head and right arm. She complained of pain to her husband but continued working at the hospital and did not complain or report the accident to her co-workers or to her employer. She explained that she and her husband were hardpressed to pay bills, and since she could not afford to miss work she put off seeing a doctor until her scheduled vacation which began late in June, 1975.
After consulting one physician on June 26, 1975, Thompson returned the next day because she was experiencing severe pains *83 in her neck and back. The first physician was not available so she saw Dr. John A. Thomas who became her treating physician. On the basis of her history and his physical examination which disclosed considerable tenderness and muscle spasms of the spine and neck, Dr. Thomas diagnosed a muscle sprain. Because of the severity of her pain, Dr. Thomas admitted Thompson to the defendant hospital for treatment. On the medical history, Dr. Thomas related Thompson's disability to the May accident.
Thompson's first report of the accident and claim of injury was filed with the employer after she was discharged from the hospital. However the employer learned indirectly of Thompson's complaints while she was on vacation.
The hospital administrator, Eugene Spillman, received letters from Thompson's attorney dated July 24, and August 5, 1975. The first letter sought information relative to a proposed tort suit against the driver of the rear-ending station wagon, together with the name and address of that driver. The ambulance driver had delivered that information to the hospital office on the day of the accident. This information was misplaced and was unavailable at trial. Tr. 56.
After Thompson's attorney made several written demands on the hospital for workmen's compensation, suit was filed on November 19, 1975. The judgment on appeal was signed January 30, 1976.
There are three issues to be resolved: 1) Did the trial court commit manifest error in finding a causal connection between the accident of May 16, 1975 and Thompson's disability diagnosed June 27, 1975? 2) If so, did Thompson prove total and permanent disability? 3) If so, was defendant insurer's refusal to pay workmen's compensation benefits arbitrary and capricious, thereby entitling Thompson to penalties and attorney fees?

CAUSAL CONNECTION BETWEEN THE ACCIDENT AND THOMPSON'S DISABILITY
In written reasons the trial judge held that although Thompson's accident was a minor one, she experienced pain related to the accident on the following day. Defendants contend Thompson's failure to report injuries for so long a period (she worked for five weeks after the accident without complaining and stopped work then to begin her scheduled vacation), and her failure to complain to fellow employees or show signs of injury at work, are convincing evidence of the lack of connection between the accident and her diagnosed disability.
During her eight years employment as a nurse's aide, Thompson was not a complainer. The hospital administrator admitted Thompson was a good employee and would not lie. The only time Thompson missed work was in October, 1974, after pulling a back muscle while lifting a patient. Appropriate compensation was paid at that time, and Thompson returned to work. There is no evidence of another accident or unusual occurrence from May 16 to June 27, 1975 when her condition was diagnosed. Thompson explained she continued working without complaining because she couldn't afford to miss work; there were numerous family bills that had to be paid in addition to the usual expenses of raising four children. Thompson's husband corroborated her testimony that she began experiencing pain the morning following the accident; that she didn't consult a physician because she couldn't afford to miss work.
The hospital administrator questioned the causal connection between the accident and the diagnosed disability because of the long period of time between the accident and her report of the injuries. The insurer's claims investigator admitted his investigation of the claim turned up no derogatory *84 information concerning Mrs. Thompson.
Although defendant presented eleven hospital employees (either by testimony or by stipulation that their testimony would be similar) who testified that they spoke to and observed Thompson while she was at work after the accident, never hearing complaints nor noticing external signs of pain, these employees did not testify that they worked closely with claimant.
Dr. Thomas testified that the objective symptoms of severe pain present on June 27, 1975 were consistent with the type injury Thompson described to him; that many times such injuries produce a gradual onset of pain; and in his opinion, her injuries were caused by the accident. His was the only medical testimony in the record. Defendants did not seek to have Thompson examined.
Where there is proof of an accident and of a following disability without an intervening cause, it is presumed that the accident caused the disability. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969). In Russell v. Employers Mutual Liability Insurance Company of Wisconsin, 246 La. 1012, 169 So.2d 82 (1964), based on expert testimony, the court found a causal connection between an accident and blackouts and dizziness occurring almost two years later. See also Malone, Louisiana Workmen's Compensation Law and Practice, Permanent Edition, § 252, pp. 299-301.
The testimony of an employee alone may establish a work related accident where such testimony is corroborated by other credible evidence. Wright v. Red Ball Motor Freight, Inc., 315 So.2d 344 (La.App. 1 Cir. 1975). In the Wright case, the court considered claimant's work record (he too had worked six or seven years for the same employer and given good performance), and his honesty and integrity. While there was a dispute as to whether claimant reported his work related accident, the court accepted his testimony which was corroborated by his wife and a union steward.
While claimants must establish causation by a preponderance of evidence, we fail to find manifest error in the trial court's determination that there was a causal connection between the May 16, 1975 accident and Thompson's subsequently diagnosed disability.
The trial judge's findings on the question of causation must be given great weight. Gradney v. Vancouver Plywood Company, Inc., 299 So.2d 347 (La.1974). In Matte v. Power Rig Drilling Co., Inc., 260 So.2d 19 (La.App. 3 Cir. 1972), a case where claimant had admittedly concealed his back injury from his foreman because he feared the loss of his job as a roughneck, this court affirmed the trial court's determination that the injury was due to a job related accident. Great weight was attached to the trial judge's evaluation of credibility. See also Jagneaux v. American Universal Insurance Co., 231 So.2d 601 (La.App. 3 Cir. 1970), where the court acknowledged that complaints are factors to be considered in determining whether plaintiff has carried his burden of establishing a causal connection. Absent evidence of another accident, the present disability will not be ascribed to some unshown subsequent injury. 231 So. 2d 601 at 603.

TOTAL AND PERMANENT DISABILITY
When Thompson was discharged as having reached the point of maximum improvement on December 1, 1975, Dr. Thomas did not think she could return to her employment as a nurse's aide. Tr. 97. This opinion was based on his understanding that nurse's aides occasionally lift and turn patients. While co-employees testified that hospital policy provided for aides to get assistance when lifting was necessary, there was also testimony that aides *85 did in fact lift and move patients in and out of beds. Evidence supports Dr. Thomas's understanding of the nature of the work Thompson would be expected to perform and the trial judge's finding of total and permanent disability.
Total and permanent disability exists when, because of injury, an employee is unable to perform work of the same or similar description that he is accustomed to perform. LSA-R.S. 23:1221(2); Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 at 12 (1932); Cooley v. Insurance Company of North America, 216 So. 2d 388 (La.App. 3 Cir. 1968); Bellard v. Insurance Company of North America, 193 So.2d 922 (La.App. 3 Cir. 1967).

PENALTIES AND ATTORNEY'S FEES
Attorney's fees are granted when the denial of workmen's compensation benefits is arbitrary and capricious. LSA-R.S. 23:1201.2.
We find manifest error in the trial court determination that the insurer was arbitrary and capricious in defending this claim. Since claimant bears the burden of proof to establish that her disability resulted from a job related accident, defendants were not arbitrary and capricious in making the decision to defend this claim where the employee: 1) was involved in a minor accident, 2) continued working for five weeks after the accident, 3) did not report the accident for two months, and 4) did not show or complain of pain or disability to co-workers during her five weeks of work following the accident.
Employers are not to be penalized for taking their case to court for judicial resolution of a close factual question. Wright v. Red Ball Motor Freight, Inc., 315 So.2d 344 (La.App. 1 Cir. 1975); Gatheright v. U. S. Fidelity & Guaranty Company, 267 So.2d 576 (La.App. 3 Cir. 1972). Starks v. Hardware Mutual Casualty Company, 231 So.2d 657 (La.App. 2 Cir. 1970).
The trial court judgment is affirmed insofar as it awarded total and permanent workmen's compensation benefits, medical payments, and expert witness fees. The judgment awarding penalties and attorney fees is reversed and set aside. All costs of this appeal are assessed to defendants.
AFFIRMED, in part; in part REVERSED and RENDERED.